(C. D. 1879)

MERCANTIL DISTRIBUIDORA, S. A., ET AL. v. UNITED STATES

United States Customs Court, Third Division

(Decided May 16, 1957)

*Lawrence & Tuttle* (*George R. Tuttle* and *Lawrence A. Harper* of counsel) and *Barnes, Richardson & Colburn* for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and OLIVER, Judges

DONLON, Judge: The merchandise is described in the invoices and entries as boneless cured beef. It was imported from Mexico and Argentina and entered at the ports of Laredo and New York, on May 25, 1951, and on various dates thereafter in 1951.

Prior to May 25, 1951, and effective during the period of these imports, the Secretary of Agriculture, under authority of section 306 of the Tariff Act of 1930, determined that rinderpest, or foot-and-mouth disease, existed in Mexico and Argentina and declared importations of beef from those countries prohibited. Notice of this de-

termination and prohibition was given in Order 373 of the Bureau of Animal Industry (herein referred to, for brevity, as BAI) revision of May 7, 1951. (9 C. F. R. § 94.1.) The prohibition was not, however, absolute. In the same order (section 94.4 [9 C. F. R. § 94.4]), importations of *cured* meats from Mexico and Argentina were permitted, on the condition, pertinent here, that the "meat shall have been thoroughly cured by the application of dry salt or by soaking in a solution of salt."

This case is before us on a stipulation of facts (R. 3) as follows:

MR. TUTTLE: I now offer to stipulate with the Government that the merchandise described in the invoices covered by the consolidated protests as boneless cured beef, with or without words of qualification or description, and classified under Paragraph 706, Tariff Act of 1930 as amended, as prepared meats, not specially provided for; cured beef not in air-tight containers, and assessed at 20 per cent ad valorem, consists of beef of the same character and description as that covered by United States vs. Mercantil Distribuidora S. A., et al., 43 Court of Customs & Patent Appeals, with a missing page, C. A. D. 617, and therein held dutiable under Paragraph 706 as meats, prepared or preserved, not specially provided for (except beef packed in air-tight containers and pickled or cured beef) 3 cents per pound but not less than 10 per cent ad valorem, *and* that the record in said case may be admitted in evidence herein.

MR. FITZGIBBON: Government so stipulates.

This case is essentially a retrial of the same issue litigated in *Mercantil Distribuidora, S. A., et al.* v. *United States*, 33 Cust. Ct. 158, C. D. 1648 (1954), and there decided for the plaintiffs. On appeal, our decision was affirmed by a divided appeals court. *United States* v. *Mercantil Distribuidora, S. A., et al.*, 43 C. C. P. A. (Customs) 111, C. A. D. 617 (1956). Defendant then petitioned the appeals court for rehearing, alleging error, and its petition was denied. Volume 91 Treasury Decisions, June 28, 1956, page 24.

Three protests are consolidated here for trial (R. 3). Each is a case previously suspended, under rule 16 of this court, pending the final decision in the earlier *Mercantil* case, *supra*. After that decision had become final and these protests were removed from the suspended list, defendant declined to stipulate these cases under that decision. Plaintiffs, therefore, noticed these protests for trial. That is how they have now come before us.

The facts here are not different in any significant respect from the facts in the earlier *Mercantil* case, the record of which is a part of the record now before us (R. 3). The new evidence here is two exhibits not introduced in the earlier case. One is BAI Order 373. (Plaintiffs' exhibit 15.) However, it adds nothing significant to the record, as the court may be deemed to have taken judicial notice of the terms of that order in the previous trial. The other new exhibit consists of affidavits that are attached to the official papers in two of these three cases, protests 197905–K and 197907–K, in which

representatives of the importers certified either that the imported meat was "thoroughly cured" or that it was "cured with 4 and a half per cent salt for period of 20 days." (Defendant's exhibit V.) Although similar affidavits were not in evidence in the first *Mercantil* case, statements in these affidavits are similar to statements in the official papers in that case. They, too, add little to the earlier record.

The official papers in these three cases were not introduced in evidence.

It is not necessary to review here the details of processing this beef, discussed at length in the earlier *Mercantil* case. The fact is that this beef was treated with 4 to 4½ per centum salt which, while it permeated the meat, was not sufficient to preserve the meat without refrigeration (R. 488, 497, incorporated record). Plaintiffs concede that this meat was "thoroughly cured" within the meaning of the BAI order (R. 15). Testimony of defendant's witnesses, in the incorporated record, is that "thoroughly cured," as that term is used in the BAI order, means no more than that the curing agent (here, salt) had completely permeated the meat (R. 305–6; 497–8).

The collector classified these meats under paragraph 706 of the Tariff Act of 1930, as modified by the trade agreement with Paraguay (T. D. 51649), as meats, prepared or preserved, not specially provided for, dutiable at a reduced rate of 3 cents per pound, but not less than 20 per centum ad valorem.

Plaintiffs' claim is that these meats come under the General Agreement on Tariffs and Trade (T. D. 51802) revision of paragraph 706, as "Meats, prepared or preserved, not specially provided for (*except* beef packed in air-tight containers and pickled or *cured beef* or veal)." [Emphasis supplied.]

The gist of this litigation, as of the earlier *Mercantil* litigation, is whether this meat does or does not fall within the GATT exception, above italicized, as "cured beef." That is the sole issue. Plaintiffs argue that the earlier *Mercantil* case is *stare decisis* and that, on the authority of that decision, judgment should be for plaintiffs.

Defendant argues that, although the merchandise and issue were the same as here, the earlier *Mercantil* case is not *stare decisis*, because of two erroneous findings in that case. Although not successful there, after pursuing its case to the point of a petition for rehearing in the appeals court, defendant presses here again its objection to these two findings. The position defendant took, and still urges, is stated in its brief now before us (p. 4) as follows:

* * * the Court made two findings which the defendant herein believes to be erroneous. It found (1) that the Court was not bound by the interpretation of the Bureau of Animal Industry as to the meaning of the term "cured." It states, page 116:

If this court were to be bound by the interpretation of the Bureau of Animal Industry as to the meaning of "cured," we would, of course, have to find for the Government, and reverse the holding of the court below. However, the claim that the meaning of the regulation would be binding upon this court in determining tariff usage was correctly rejected by the court below, citing *F. W. Myers & Co., Inc.* v. *United States*, 29 C. C. P. A. (Customs) 30, C. A. D. 167, to the effect that a Department of Agriculture regulation does not bind this court in its determination of the meaning of words for tariff purposes. Government counsel does not attempt to urge here that the BAI regulation does have binding effect. Certainly, it is entirely conceivable that a word with more than one meaning might be used in one sense in a regulation of the Agriculture Department, and in another sense in the Customs Laws. Unless the tariff term should be shown to have been drafted with reference to the regulation, this court cannot avoid its duty of inquiring into the meaning intended for tariff purposes, which may or may not have been the same as that of the regulation.

It also found (2) that the term "cured" had two common meanings and then limited the meaning of the term "cured" as used in G. A. T. T. to only one of those meanings, thereby completely disregarding the provision in G. A. T. T. for beef prepared by curing.

Defendant now wishes the court to understand that it does here urge that the BAI order has binding effect on this court in determining the tariff meaning of the term "cured beef," as that term was used by the GATT negotiators. In support of this contention, defendant marshals the same arguments it advanced in the *Mercantil* case, *supra*, and cites only one new authority. That case we shall consider presently.

Plaintiffs have briefed this issue comprehensively.

As we read the briefs before us, defendant claims some special significance for the BAI order, in a tariff classification sense, because the order was issued by the Secretary of Agriculture under authority of the tariff act. Section 306, Tariff Act of 1930.

The sole case cited by defendant, as authority for this proposition, is *United States* v. *Mexican Petroleum Corp.*, 28 C. C. P. A. (Customs) 90, C. A. D. 130. In that case, imported oil was subjected to internal revenue tax, although removed from bond under customs supervision on sale as fuel supplies to a vessel in foreign trade, for the reason that the vessel called at an intermediate port in the United States, and the collector at that port found that the requirements of the regulations, basic to tax exemption, had not been complied with. The importer of the oil argued that it had no control over the vessel and should not be subjected to tax because the master of the vessel failed to comply with the regulations. The appeals court, reversing this court, held that the importer, being subject to tax on the imported oil, could obtain relief only by strict compliance with reasonable regulations and that there was not such compliance.

We see nothing in this decision that calls for distinguishing the earlier *Mercantil* decision. It is too well established to require citation, that those who seek relief from taxation must comply with proper regulations prescribed for such cases.

This is not such a situation. The case cited is not, in our opinion, authority for defendant's argument that what satisfied the Secretary of Agriculture as beef, cured sufficiently to be disease free, is beef, cured in a commercial or tariff sense.

The argument that the same tariff significance for the word "cured" must be inferred from the order of the Secretary of Agriculture as from the GATT provision under paragraph 706, because it is issued under the tariff act, loses some of its force, by reason of the fact that BAI 373 expressly depends, for its statutory authority, not only on the provision of the Tariff Act of 1930, but also on the authority conferred on the Secretary of Agriculture by chapter 349 of the laws of 1903, which is an act to enable the Secretary of Agriculture to more effectually suppress and prevent the spread of contagious and infectious diseases of livestock. [32 Stat. 791, 792.] It is under this latter statute that express authority was conferred on the Secretary of Agriculture by Congress to "make such regulations and take such measures as he may deem proper" to prevent the introduction of contagion of animal diseases from a foreign country into the United States.

Defendant argues here, in effect, that plaintiffs cannot have their cake and eat it too; that, if this meat is prepared, it is prepared by "curing"; that, if it is not prepared by curing, it is not "prepared" meat, entitled to the rate reduction as such. Defendant correctly states that the imported merchandise *is* prepared meat. That much is a stipulated fact (R. 480, incorporated record). Products made from the imported merchandise include chili with and without beans, tamales, beef stew, meat balls for spaghetti, beans, and chili pie (R. 87, incorporated record). In each of these, salt in prescribed amounts is an additive (R. 93, 94, incorporated record). Whether the so-called salt-curing process required by the Department of Agriculture constituted preparation for use, in the tariff sense, is not clear on the evidence of record. Salt apparently was added in order to comply with the BAI regulations, but without intention to advance the meat for use in commerce. The record shows that industry adopted a practical approach to the problem created by the salt additive, by using such meat for production of products in which salt was desirable or, at least, not objectionable. Thus, in the production of beef stew, additional salt was needed, but allowance was made for the salt already in the meat (R. 95, incorporated record); in the production of chili and beans, no salt was added, the amount

already in the meat being thought sufficient (R. 96, incorporated record); and in chili, without beans, domestic unsalted beef was used with the imported salted product to dilute the salt additive (R. 96, incorporated record). Defendant's argument, moreover, overlooks evidence of record in the incorporated case with regard to preparation by processes, such as slicing and cutting, other than salt additive, or curing (R. 23 through 27, incorporated record).

While not necessarily conclusive, it should be noted that defendant's argument that this meat is prepared by curing was the error advanced in its petition to our appeals court for rehearing in the previous *Mercantil* case. The court denied that petition. We assume that this decision rested on thoughtful and comprehensive consideration of defendant's arguments. There is nothing before us that would lead us to think otherwise.

In our opinion, the decision in *United States* v. *Mercantil Distribuidora, S. A., et al.*, 43 C. C. P. A. (Customs) 111, C. A. D. 617, is *stare decisis* of this litigation.

The claim made in these protests for duty at 3 cents per pound, but not less than 10 per centum ad valorem, under paragraph 706 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (T. D. 51802), is sustained. Alternative claim made in protest 256406–K for duty under paragraph 701, as modified, is deemed abandoned.

Judgment will be entered accordingly.